[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 325.]

CINCINNATI BAR ASSOCIATION *v.* RANDOLPH.

[Cite as *Cincinnati Bar Assn. v. Randolph*, 1999-Ohio-268.]

*Attorneys at law—Misconduct—Public reprimand—Collecting an illegal or clearly excessive fee—Failing to pay upon request client funds that client is entitled to receive.*

(No. 98-2685—Submitted February 10, 1999—Decided April 7, 1999.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-103.

_____

{¶ 1} On December 8, 1997, relator, Cincinnati Bar Association, filed a complaint charging respondent, Daniel P. Randolph of Cincinnati, Ohio, Attorney Registration No. 0029075, with violating several Disciplinary Rules. After respondent submitted an answer and the parties filed stipulations, the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} The panel found that in 1970, Louise Loretta Woehler executed a will providing in Item IV that the residue of her estate be held in trust for certain purposes, including paying up to $1,500 of the burial expenses of her son, Louis L. Ihrig, if he survived Woehler. Item IV of the will also provided that the residue of Woehler's estate be held in trust for the benefit of her four grandchildren and directed that the trustees distribute the trust's corpus and income to the grandchildren when the youngest of them reached the age of thirty. In 1978, Woehler died, and Ihrig survived her. First National Bank of Cincinnati, n.k.a. Star Bank N.A. ("First National"), was appointed executor of the estate and trustee of the testamentary trusts.

{¶ 3} In late 1984, when the will required final distribution of the testamentary trusts to Woehler's four grandchildren, First National requested that respondent prepare an application to establish a burial fund for Ihrig. Respondent then filed an application on behalf of First National, requesting that the probate court authorize that $1,500 be withdrawn from the trusts and deposited into a savings and loan account in respondent's name in trust, to be payable with all accrued interest on the death of Ihrig for his burial expenses. In January 1985, the probate court approved the application and ordered First National to deliver $1,500 to the savings and loan, with the money to be released to Ihrig's estate or the funeral home selected by his next of kin on his death to be used for his burial. First National issued the $1,500 check payable to the savings and loan with instructions to deposit the money in a savings account in respondent's name as trustee until Ihrig's death.

{¶ 4} When Ihrig died in July 1995, the amount in the savings and loan burial fund account, with accrued interest, totaled $2,725.09. Upon being informed by the funeral home about Ihrig's death, respondent sent the funeral home a check in the amount of $1,500. He kept the remaining $1,225.09 in the burial account as a fee for the services rendered even though he (1) did not do anything other than determine whether an annual tax form was required to be filed, (2) did not have prior written authorization from the probate court for any fee, and (3) did not enter into any written fee agreement with First National, Woehler, or her grandchildren.

{¶ 5} In March 1997, one of Woehler's grandchildren demanded that respondent provide an invoice and accounting of his $1,225.09 fee. Respondent did not offer to return the money until December 1997, when he filed his answer to relator's disciplinary complaint.

{¶ 6} The panel concluded that respondent's conduct violated DR 2-106(A) (collecting an illegal or clearly excessive fee) and 9-102(B)(4) (failing to pay upon request client funds which client is entitled to receive).

**{¶ 7}** In mitigation, the panel found that respondent initially erroneously believed that he was entitled to the fee. It was not until he read the disciplinary complaint and attached exhibits that respondent realized that he had no right to a fee, and he returned the remaining account money to the grandchildren. Respondent accepted complete responsibility for his error and testified that he had no previous disciplinary violation in a lengthy legal career. The panel heard witnesses and received letters attesting to respondent's exceptional professional ability and exemplary character for honesty and integrity.

**{¶ 8}** The panel recommended that respondent receive a public reprimand. The board adopted the findings, conclusions, and recommendation of the panel.

———————————

*Nancy J. Gill, G. Mitchell Lippert* and *Richard H. Johnson*, for relator.

*John H. Burlew* and *Charles W. Kettlewell*, for respondent.

———————————

***Per Curiam.***

**{¶ 9}** We adopt the findings, conclusions, and recommendation of the board. A public reprimand is the appropriate sanction for respondent's isolated act of misconduct. See *Akron Bar Assn. v. Naumoff* (1991), 62 Ohio St.3d 72, 578 N.E.2d 452, and *Mahoning Cty. Bar Assn. v. Gilmartin* (1991), 62 Ohio St.3d 10, 577 N.E.2d 350, where we publicly reprimanded and ordered attorneys to make full restitution to clients for violating DR 2-106(A). As the board found, once respondent became aware of his error in retaining a fee from the burial fee account, he made complete restitution to the beneficiaries of the testamentary trust and accepted complete responsibility for his actions. Respondent is hereby publicly reprimanded. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.